**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELI SPORN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>          v.<br><br>BRAINSTORM CELL THERAPEUTICS INC., CHAIM LEBOVITS, STACY LINDBORG, and RALPH KERN<br><br>     Defendants. | Case No. 1:23-CV-09630-DEH<br><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Douglas H. Flaum
Molly L. Leiwant
Dina Ljekperic
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax: 212.355.3333
dflaum@goodwinlaw.com
mleiwant@goodwinlaw.com
dljekperic@goodwinlaw.com

*Attorneys for Defendants BrainStorm Cell Therapeutics Inc., Chaim Lebovits, Stacy Lindborg, and Ralph Kern*

**TABLE OF CONTENTS**

**Page**

I.   PLAINTIFF HAS NOT ADEQUATELY PLEADED SCIENTER. .............................. 1

  A.  The AC Fails to Plead Motive to Commit Fraud. ......................................................... 2

  B.  The AC Fails to Plead Conscious Misbehavior or Recklessness. ............................... 4

  C.  The Non-Fraudulent Inference Arising From Plaintiff's Allegations Is Far More
      Compelling. ................................................................................................................... 7

II.  PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING
     STATEMENTS OR OMISSIONS. ................................................................................ 8

III. PLAINTIFF'S ADDITIONAL CLAIMS FAIL. ........................................................... 10

CONCLUSION ....................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc.*,
  781 F.3d 638 (2d Cir. 2015)...................................................................................2

*In re Alkermes Pub. Ltd. Co. Sec. Litig.*,
  523 F. Supp. 3d 283 (E.D.N.Y. 2021) ...............................................................5, 6

*In re Aratana Therapeutics Inc. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018)...................................................................3

*In re Axonyx Sec. Litig.*,
  2009 WL 812244 (S.D.N.Y. Mar. 27, 2009) ........................................................4

*In re Blech Sec. Litig.*,
  928 F. Supp. 1279 (S.D.N.Y. 1996).......................................................................7

*In re Chembio Diagnostics, Inc.*,
  586 F. Supp. 3d 199 (E.D.N.Y. 2022) ...................................................................5

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
  616 F. Supp. 3d 192 (E.D.N.Y. 2022) ................................................................2, 3

*In re Delcath Sys., Inc. Secs. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014)......................................................................6

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...................................................................................1

*In re Fannie Mae 2008 Sec. Litig.*,
  2011 WL 13267340 (S.D.N.Y. Apr. 11, 2011)......................................................3

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................7, 8

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).....................................................................7

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018).....................................................................8

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................3, 4

*Midwest Op. Engin'rs Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*,
  2021 WL 5782079 (2d Cir. Dec. 7, 2021) ...............................................................4, 5

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)................................................................................1

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................9

*In re PXRE Group, Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009).................................................................3

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)....................................................................5

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)..................................................................................4

*Skiadas v. Acer Therapeutics Inc.*,
  2020 WL 3268495 (S.D.N.Y. June 16, 2020) .................................................2, 8

*Tongue v. Sanofi*,
  816 F.3d 199 (2d. Cir. 2016)...............................................................................9

*Weslowski v. Zugibe*,
  96 F. Supp. 3d 308 (S.D.N.Y. 2015)..................................................................10

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
  2024 WL 451691 (S.D.N.Y. Feb. 5, 2024)..........................................................6

*Zagami v. Cellceutix Corp.*,
  2016 WL 3199531 (S.D.N.Y. June 8, 2016) ........................................................9

iii

The Opposition lays bare Plaintiff's fundamental misunderstanding of the securities laws, which unquestionably did ***not*** require BrainStorm to abandon its efforts to obtain FDA approval of its drug to combat the effects of an incurable disease just because obtaining that approval would be difficult. To the contrary, the Opposition[1] confirms that Plaintiff's claims are pure fraud-by-hindsight, based on his *opinion* about what Defendants should have said or done differently during the purported class period. However, the Opposition (and the AC) ignores that at each step of the FDA process, BrainStorm disclosed the design and then results of the Phase 3 Trial, as well as its basis for moving forward along a pathway offered by the FDA. Moreover, Plaintiff ignores that BrainStorm's statements regarding NurOwn and the Phase 3 Trial were not made in a vacuum, but instead in the context of the development of a treatment for a fatal disease and the FDA's public ALS Guidance for its review of such potential treatments. Ultimately, the AC is a "meritless" stock drop case that the heightened pleading standards of the PSLRA simply do not permit. *See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000), *cert. denied*, 531 U.S. 1012.

## I.   **PLAINTIFF HAS NOT ADEQUATELY PLEADED SCIENTER.**

The AC simply does not assemble the type of particularized allegations that gives rise to the required "strong inference" that "the defendant[s] acted with . . . an intent to deceive, manipulate, or defraud," *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted), and Plaintiff's Opposition fails to explain away any of the fatal weaknesses of the AC. There are no allegations from an internal document or a confidential witness showing that Defendants knew have or should have known of information that directly contradicted their statements about NurOwn's clinical trials and the path to regulatory

---

[1] Defendants' Memorandum of Law in Support of the Motion to Dismiss the Amended Class Action Complaint, ECF No. 32, shall be referred to herein as the "Motion" or "Mot." Plaintiff's Memorandum in Opposition to the Motion, ECF No. 34, shall be referred to as the "Opposition" or "Opp." Other capitalized terms are as defined as in the Motion.

approval at any point before the release of the Briefing Document, two days before the AdCom. Likewise Plaintiffs do not allege that BrainStorm's short-term financial survival hinged on a need for an immediate capital raise or any unusual insider trading patterns.  The Opposition's cherry-picking of the record and case law fails to cobble together a picture of fraud—"[i]t is not enough" for Plaintiff "to set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent.'"  *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (citation omitted).  Even viewed in the light most favorable to Plaintiff, the facts pleaded here portray a far more cogent non-fraudulent inference: that BrainStorm reasonably believed they had a basis for continuing to engage with the FDA regarding the results of the Phase 3 trial.

### A.      The AC Fails to Plead Motive to Commit Fraud.

Plaintiff's motive allegations are merely generic financial motivations and unremarkable stock sales that cannot plead an inference of scienter.  *See* Mot. at 10–12.  *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *1 (S.D.N.Y. June 16, 2020) is no help to Plaintiff.  *See* Opp. at 23–25.  To plead "financial survival grounds for motive," courts require specific facts suggesting that a company was "in dire straits and desperate for a capital infusion."  *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 200 (E.D.N.Y. 2022); *accord Skiadas*, 2020 WL 3268495, at *11.  Unlike here, the *Skiadas* plaintiffs sufficiently alleged that type of motive by pointing to defendant's statement that it had a specific and immediate need for liquidity "within one year" to remain viable.  *Skiadas*, 2020 WL 3268495, at *11.  In contrast, Plaintiff here points to disclosures that BrainStorm had operated at a loss since its inception and warning investors that it would need sufficient capital as it progressed[2]—the reality of any development stage pre-revenue

---

[2] *See, e.g.*, Ex. 8, December 2020 Form 10-K at 57, ECF 33-8 ("Since its inception, the Company has devoted substantially all of its efforts to research and development. The Company is still in its development and clinical stage and has not yet generated revenues. The extent of the Company's future operating losses and the timing of becoming profitable are uncertain. . . . The Company

company, and no surprise to investors.[3]  This is not scienter.

The AC's insider trading allegations are similarly deficient.  Plaintiff cannot refute that Lebovits *doubled* his shares in the Company during the Class Period.  Mot. at 12; Opp. at 25 n.25. Plaintiff instead urges the Court (without citing any precedent) to ignore this fact because the shares were awarded under an option plan.  But it is the "net acquisition of shares [that] cuts against the notion that defendants sought to unload their holdings of . . . stock before their likely diminution in value following the disclosure of negative insider information." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383 (E.D.N.Y. 2003); *see also In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 762–763 (S.D.N.Y. 2018) (considering stock options in assessing whether an insider's sales are indicative of scienter).[4]

Nor does the Opposition meaningfully address that Lebovits's trades are too attenuated in

---

currently has sufficient cash to complete its ongoing Phase 2 PMS and Phase 2 AD clinical trials.").

[3] Plaintiff's attempt to distinguish *Chembio* fails.  *See* Opp. at 24, n.22.  There, as here, were no "thoroughly pleaded" facts that "the company's financial survival depended on the stock offering," which that court suggested would be akin to allegations of substantial accumulated debt and/or disproportionate operating expenses prior to the offering.  *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d at 200; *see also In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) (allegation of "amorphous scheme to stave off a company's collapse" is too generalized a motive), *aff'd sub nom.*, *Condra v. PXRE Group Ltd.*, 357 Fed. Appx. 393 (2d Cir.).

[4] Plaintiff only alleges the sales of stock Lebovits owned indirectly via an entity called ACC International Holdings, Ltd.—a total of 71,753 shares sold (¶ 277)—but ignores that Lebovits owned far more BrainStorm stock in this same period not only in his own name, but also via another entity, ACCBT Corp., totaling 294,142 shares in which Lebovits had an ownership interest as of August 2023.  *See* Doc. No. 33-14.  The sales identified by Plaintiff made up only 3.1% of his holdings in the Company prior to the filing of the Complaint.  Plaintiff's argument that "Kern's and Lindborg's lack of sales does not negate scienter" (Opp. at 25) also goes nowhere.  *In re Fannie Mae 2008 Sec. Litig.*, 2011 WL 13267340, at *1 (S.D.N.Y. Apr. 11, 2011) (Opp. at 25) is inapposite.  There, the fact that two executives purchased stock did not "negate" an inference scienter where the allegations also involved emails *and* Congressional testimony from those same executives indicating knowledge of facts that directly undermined their statements to investors. *Id*. at *3.  No such allegations—or anything even close—exist here.

3

time from the alleged misstatements and the alleged corrective disclosures to give rise to a strong inference of scienter.  Mot. at 11–12.  Instead, Plaintiff argues, again without citation, that the Court should infer that the trades reveal some level of fraudulent intent because they occurred "less than eight weeks before the Trial completion . . . which Lebovitz knew failed."  Opp. at 25, n.25.  Plaintiff ignores that this time period is longer than courts typically find for a strong inference of scienter.  *See* Mot. at 11–12 & n.9.[5]  Moreover, Plaintiff does not allege that the sales "followed closely on the heels of any falsely positive statement."  *Keyspan*, 383 F. Supp. 2d at 385.  Instead, the alleged sales (all of which occurred between July 9, 2020 and July 16, 2020) predate nearly all of the alleged misstatements and follow the first alleged misstatements *by months*.  What is clear is that Plaintiff chose this unusually long class period "not because the allegations found elsewhere in the complaint support an inference of fraud throughout the class period, but because lengthening the class period has allowed [plaintiff] to sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period."  *See id*. at 383  (citation and quotation omitted).

### B.       The AC Fails to Plead Conscious Misbehavior or Recklessness.

Plaintiff's assertion that alleging Defendants "were aware of FDA's concerns in the RTF and meetings . . . alone suffices to allege scienter" reveals a fundamental misunderstanding of the law.  Pleading conscious misbehavior or recklessness requires "strong circumstantial evidence."  Mot. at 9–10, 13; *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001).  That is, "*not merely a heightened form of negligence*" but "a state of mind *approximating actual intent*." *Midwest Op. Engin'rs Pension Tr. Fund v. Alkermes Pub. Ltd. Co.*, 2021 WL 5782079, at *2 (2d

---

[5] *See also In re Axonyx Sec. Litig.*, 2009 WL 812244, at *4 (S.D.N.Y. Mar. 27, 2009) (motive cannot be inferred from stock sales "weeks before the announcement of the disappointing results of the first Phase III trial" if those sales "still left the individuals with substantial holdings in [company] stock, and therefore a considerable stake in ensuring the company's success.").

4

Cir. Dec. 7, 2021). "[T]he mere allegation that defendants failed to disclose relevant information does not in and of itself constitute strong evidence that they did so with scienter," *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. 2015) (citation omitted), *aff'd sub. nom*, *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016), and "[s]cienter arises in this context, where 'the management knows that certain facts will *necessarily* prevent regulatory approval . . . and conceals those facts from the investing public." *In re Alkermes Pub. Ltd. Co. Sec. Litig.,* 523 F. Supp. 3d 283, 293 (E.D.N.Y. 2021) (emphasis added) (citation omitted).

Plaintiff's reading of *Alkermes* suggesting that this black-letter law was merely what "plaintiffs alleged", and not the standard set forth by the court, is incorrect. Opp. at 23 n.20. This rule has been echoed throughout this Circuit. *See* Mot. at 13 n.12 (collecting cases). Absent motive, Plaintiff's failure to allege facts that demonstrate Defendants did not honestly believe that their statements of optimism to the investing public were true is fatal to his claims. *Alkermes,* 523 F. Supp. 3d at 293; *Midwest Op. Engr's Pension Tr. Fund*, 2021 WL 5782079, at *3 (affirming *Alkermes* and holding that scienter cannot be inferred from mere "misguided optimism" but facts more akin to Defendants "hiding from investors" that the FDA indicated "*absolute* barrier[s]" to approval) (emphasis added).[6]

---

[6] Plaintiff also erroneously cites *In re Chembio Diagnostics, Inc.*, 586 F. Supp. 3d 199, 219 (E.D.N.Y. 2022) for the premise that "regardless of the context . . . recklessness is established by adequately alleging that "defendants knew facts or had access to non-public information contradicting their public statements" and therefore "knew or should have known they were misrepresenting material facts[.]" Opp. at 23 n.20. Plaintiff conveniently omits the sentences that immediately follow: "The key to the analysis, ultimately, is 'the honest belief of the management in the truth of information issued to the public. If the management knows that certain facts will *necessarily prevent* the regulatory approval . . . and conceals these facts from the investing public, then there is scienter. . . . If, on the other hand, 'the management of the company releases positive reports about the drug to the public along the way which the management honestly believes to be true, and where there is no reckless disregard for truth, then that is not securities fraud.'" *Chembio*, 586 F. Supp. 3d at 219 (emphasis added) (citations omitted).

What the Opposition ignores is that throughout the entire BLA process for NurOwn, the FDA paired its concerns about the trial with encouraging feedback, which informed BrainStorm's decision to keep engaging with the FDA. BrainStorm's belief was further supported by the FDA's published guidance—and recent actions—for this very type of drug. Mot. at 14–15; 4 n.2 (FDA expresses "willingness to exercise flexibility in applying the statutory standards for approval of drugs for the treatment of [ALS]" and exercised that flexibility in 2022 with another drug in the ALS space). Accordingly, Plaintiff's reliance on *In re Y-mAbs Therapeutics, Inc. Sec. Litig.*, 2024 WL 451691, at *1 (S.D.N.Y. Feb. 5, 2024) (Opp. at 14–16) falls flat. *Y-Mabs* involved allegations that: (a) substantially all FDA feedback to the company leading up the BLA submission was negative, including the issuance of Advice and Warning letters notifying the company of concerns, the details of which the company concealed entirely; (b) the company resubmitted a BLA without seeking FDA approval to do so; and (c) this culminated in a final briefing document that "highlighted the fact that FDA had repeatedly warned Y-mAbs over the course of years about some of these issues" and "emphasized that Y-mAbs never received approval from FDA to resubmit the BLA." *Id.* at *2–4. No similar *factual* allegations exist here, as Defendants received a mix of negative and positive feedback from the FDA, and made repeated disclosures to investors about the trial's failures. Mot. at 14–16. In stark contrast to *Y-mAbs*, the AC's allegations are not indictive of executives who "hid[] their heads in the sand" (Opp. at 22), but instead are indicators of a "collective expectation that the process was an iterative one and that [BrainStorm] would continue to respond to feedback in its continued effort to seek approval of [NurOwn]." *See Alkermes*, 523 F. Supp. 3d at 294.

Nor can scienter be inferred from the solitary fact that Brainstorm is "a small company with only one product platform" (Opp. at 23)—and neither *Skiadas* nor *In re Delcath Sys., Inc.*

*Secs. Litig.*, 36 F. Supp. 3d 320, 335 (S.D.N.Y. 2014), cited by Plaintiff (Opp. at 23) supports a proposition so broad.   Finally, Plaintiff insists that Kern's resignation promotes an inference of fraud despite pleading no fact to suggest his departure was "highly unusual or suspicious."  *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011).  With no explanation, Plaintiff cites only to inapposite cases (Opp. at 23 n.19)—one case involving two defendants resigning, one the very day the alleged corrective disclosure was announced and the other during investigations by an audit committee and the SEC, and a second case involving multiple executive resignations, including one on the same day the company's accounting issues became public.[7]

> ### C.   The Non-Fraudulent Inference Arising From Plaintiff's Allegations Is Far More Compelling.

The Opposition fails to address the more compelling inference: the FDA's continued feedback, as well as the ALS Guidance, gave Brainstorm a reasonable basis to continue engaging with the FDA regarding the results of the Phase 3 Trial.  The AC contains no factual allegations (much less any with the requisite specificity) suggesting that Defendants did not believe the statements they were making—with regard to the Phase 3 Trial data or the path to regulatory approval—at the time they were made.  And Plaintiff fails to recognize the import of BrainStorm's ongoing disclosures.  *See* Mot. at 17, 23.  Despite Plaintiff's protestations (Opp. at 14–15), *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016) is informative.  In *Gillis*, Judge

---

[7] The Opposition also appears to abandon the weak former employee allegations, but for a vague reference that "the Individual Defendants' unusual secrecy concerning the RTF and FDA communications . . . is yet another piece of the scienter puzzle."  Opp. at 23.  As discussed in the Motion, the Court must ignore vague, speculative, and conclusory confidential witness allegations. Mot. at 16 & n.17.  And the Complaint may not "clump[] defendants together in vague allegations" to meet the requirements of Rule 9(b).  *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996) (citation omitted); *see, e.g.*, AC ¶ 29 ("Former high-level employees at Brainstorm who reported directly to the Individual Defendants . . . confirmed that Defendants "didn't want anybody to know" about the contents of the RTF and refused to let them see it."); ¶ 154 ("FE1 stated that Brainstorm's senior leadership was 'very secretive.'").

7

Engelmayer declined to infer scienter where, as here, plaintiffs failed to allege that defendants knew or had access to non-public information contradicting their "optimistic statements regarding [the] clinical studies and the prospect of FDA approval;" nor had any reason to predict the FDA's ultimate decision-making; and made accurate, concurrent disclosures about the failings of the data and the FDA's requests for additional data. *Compare Gillis*, 197 F. Supp. 3d at 567, 599–606 *with* Mot. at 17–18.[8]  To combat this, Plaintiff falls back on cases that involve particularized and logical allegations of scienter far beyond the paucity of the allegations here.  *See, e.g.*, *Skiadas,* 2020 WL 3268495, at *10 (challenging disclosures that FDA approval was "in the bag") (citation omitted). Equally illogical and unsupported is Plaintiff's contention that Defendants made misleading statements while they secretly "hoped against odds that FDA would change its mind."  *See* Opp. at 24 n.23.  There is simply no allegation that the FDA told BrainStorm that it would not approve NurOwn; indeed, in 2020, the FDA told Defendants that it was committed to reviewing the data once the study was completed "to determine if there is a regulatory path forward that could potentially lead to approval. . . ."  AC ¶ 115.  And BrainStorm, while expressing cautious optimism based on FDA responses, was explicit with investors, including by disclosing that it would move forward via the challenging "File Over Protest" process.  Mot. at 15, 24.

Accordingly, the AC should be dismissed because it does not plead an inference of scienter.

**II.    PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING STATEMENTS OR OMISSIONS.**

Rather than address Defendants' arguments head-on, Plaintiff alleges violations of the securities laws by recharacterizing many of the challenged statements, insisting that opinion

---

[8] *See also Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 417 (S.D.N.Y. 2018), *aff'd*, 757 F. App'x 35 (2d Cir.) (absent factual allegation that defendants "subjectively believed [the drug] had ceased to have promise or should be abandoned" "defendants' qualified opinion statements reciting that there was some promise for [the drug] in novel applications must be viewed as reflecting sincerely held views").

statements about the Phase 3 Trial data and design (*see* Mot. at 19–22) should be evaluated as "facts." Opp at 11–13. Plaintiff relies on the "certainty" of the statements, which he alleges stems from the lack of "prefatory language like 'I believe' or 'In my estimation.'" Opp. at 13. But such language is not required, and reasonable interpretations of clinical data, with or without such language, are not a basis for fraud claims. *See, e.g.*, *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at \*12 (S.D.N.Y. June 8, 2016). In *Zagami*, plaintiff challenged similar statements, alleging that the statement "[gene] p21 is a biomarker" was a false or misleading statement of fact because the gene "has not been shown to be correlated with improved clinical outcomes for cancer." *Id*. at \*12. The court rejected this, holding that defendant's statement about the biomarker as a potential meaningful indicator about the effects of the drug was a "non-actionable medical opinion." *Id.* Similar statements alleged here are likewise non-actionable. Mot. at 19–22.

And even if, *arguendo*, any disclosures are statements of fact, the AC does not plead that Defendants "omit[ted] information whose omission makes the statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 209–210 (2d. Cir. 2016). Investors account for the "customs and practices of the relevant industry," and statements must be considered "as is appropriate, in a broader frame." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). "Reasonable investors understand that dialogue with the FDA is an integral part of the drug approval process, and no sophisticated investor familiar with standard FDA practice would expect that every view of the data taken by [d]efendants was shared by the FDA." *Tongue*, 816 F.3d at 214. That is especially applicable here, where the FDA's "regulatory flexibility" with respect to ALS treatments was a matter of public knowledge. *Supra* Sec. I.B.

Moreover, the Opposition ignores the full context of the notes contained within the Briefing Document. For example, Plaintiff alleges that Defendants improperly omitted the FDA's early

9

concerns about the endpoints and enrollment population, but does not dispute that its eventual feedback was that BrainStorm *not change* the existing endpoints.  AC ¶¶ 114–115; Mot. at 14. Plaintiff has no support for its position that BrainStorm should have disclosed each and every piece of feedback from the FDA when that feedback *did not change* the FDA's ultimate position at the time of the disclosure.  And for each statement Plaintiff now alleges contains an omission, Plaintiff fails to state how the alleged omission is material, when in the same disclosures, Defendants repeatedly informed investors that the Phase 3 Trial failed with respect to its primary and secondary endpoints.  *See* Ex. 5, 11/17/20 Press Release at 1, ECF No. 33-5; Ex. 6, 8/15/22 Investor Call at 5, ECF No. 33-6; Mot. at 6.

The Opposition also does not rebut that certain challenged statements are nonactionable because they are puffery or because they are forward-looking.  Mot. at 22–24.  As to the former, Plaintiff's primary response is that these statements cannot be considered to be puffery because they relate to "Brainstorm's lead product candidate" and are thus material.  Opp. at 20.  However, Plaintiff cites no case in support of this, nor could he, as the securities laws have no such obligation for companies with an emerging product.  As to the latter, Plaintiff's only argument is that the forward-looking statements are not entitled to protection under the PSLRA safe harbor because BrainStorm "knew" them to be false (Opp. at 21), which fails.  *See* Mot. at 7–17; *supra* Sec. I.B.

### III.    PLAINTIFF'S ADDITIONAL CLAIMS FAIL.

Plaintiff's claims for control person liability and insider trading also fail.  Plaintiff responds only in a brief footnote (Opp. at 25 n.27, 24 n.24), and "because the arguments appear only in footnotes, they are not properly raised, and the [c]ourt is under no obligation to consider them." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015).

### CONCLUSION

For all of these reasons, the Court should dismiss the AC with prejudice.

Dated: September 17, 2024                    Respectfully submitted,

                                             BRAINSTORM CELL THERAPEUTICS INC.,
                                             CHAIM LEBOVITS, STACY LINDBORG, and
                                             RALPH KERN

                                             By their attorneys,


                                             */s/ Douglas H. Flaum*
                                             Douglas H. Flaum
                                             Molly L. Leiwant
                                             Dina Ljekperic
                                             GOODWIN PROCTER LLP
                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, NY 10018
                                             Tel.: 212.813.8800
                                             Fax: 212.355.3333
                                             dflaum@goodwinlaw.com
                                             mleiwant@goodwinlaw.com
                                             dljekperic@goodwinlaw.com

                                             *Attorneys for Defendants BrainStorm Cell
                                             Therapeutics Inc., Chaim Lebovits, Stacy Lindborg,
                                             and Ralph Kern*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all attorneys of record.

*/s/ Douglas H. Flaum*
Douglas H. Flaum
