

**The Rosen Law Firm**

I N V E S T O R   C O U N S E L

Sara E. Fuks
Sfuks@rosenlegal.com

December 18, 2025

<u>**VIA ECF**</u>

The Honorable Dale E. Ho, U.S.D.J.
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    **Re: *Sporn v. Brainstorm Cell Therapeutics, Inc., et al.*, 1:23-cv-09630-DEH**

Dear Judge Ho:

On behalf of Lead Plaintiff George Colby and named Plaintiffs Eli Sporn and Brett Shirley ("Plaintiffs"), and in accordance the Parties' joint letter filed in connection with Civil Case Management Plan and Scheduling Order (ECF No. 42, at 3-4), Plaintiffs submit this letter motion requesting a conference before the Court concerning the contents of the proposed order concerning electronic discovery protocols ("ESI Protocol").

On October 10, 2025, Plaintiffs circulated a draft proposed ESI Protocol to Defendants. Defendants provided proposed edits to the ESI Protocol on November 5, Plaintiffs responded with their proposed edits on November 11, and on November 13, 2025, the Parties had their first telephonic meet and confer concerning the ESI Protocol. The Parties met and conferred via telephone over the course of the following four and half weeks and exchanged several emails and drafts containing competing proposals. While the Parties were able to resolve their disputes in several areas, they have been unable to come to an agreement concerning: 1) the definition of "Hyperlink", 2) production of "Hyperlinked Documents", and 3) language concerning the roles of the respective Parties in evaluating the procedures for producing one's own hard copy and ESI documents. Plaintiffs' proposed ESI Protocol is attached hereto as Exhibit 1. A redline showing Defendants' proposed language on the disputed areas is attached hereto as Exhibit 2. For the reasons stated herein, Plaintiffs respectfully request that the Court so-order Plaintiffs' proposed ESI Protocol.

***Definition of Hyperlink***

Plaintiffs' proposed definition of "hyperlink" encompasses the notion that both the "anchor" and "target" text should be produced. A hyperlink is a compound element that comprises both the user-facing content ("anchor" text or image) and the underlying locational data (the URL/metadata "target"). (Exhibit 1, pages 4-5). By definition, a hyperlink includes the visible, clickable element, known as the "anchor text" or "link text" which provides the context and

information about where the link will lead. The linked location (URL) is the actual address of the destination and is a fundamental component of the hyperlink's underlying code. The URL is essentially data about the "target" resource. Metadata, or "data about data," describes the link's target and purpose. The URL, anchor text and other attributes all serve as metadata. If a hyperlink is defined as *not* including metadata or text, as Defendants propose (Exhibit 2, pages 4-5) , this essentially means that there is no information in the link, and the link goes nowhere. Consider for example and email saying, "look at this" with a link following the word "this." If the link does not contain metadata or text, the link goes nowhere, and the reader has no way of knowing what "this" refers to.

### *Production of Hyperlinked Documents*

Modern corporate communications often contain hyperlinks to documents stored on corporate servers, in the "cloud", or on other shared repositories. Hyperlinks have, in many cases, replaced the practice of attaching Word documents or PDFs to emails. These hyperlinked documents are essentially attachments, and Plaintiffs' proposed language would treat them as such: if a responsive, non-privileged document contains a hyperlink, the hyperlinked document should be produced and linked to the original document via metadata to preserve the parent/child relationship. Plaintiffs' proposed language would require Producing Parties – only to the extent such an automated search is feasible – to run an automated search to identify responsive documents that contain hyperlinks, locate the hyperlinked documents, and produce them. (Exhibit 1, page 17). Additionally, to the extent any hyperlinked document is missed by a Producing Party, the Receiving Party would be able to send specific requests for hyperlinked documents to be produced. *Id.* Finally, the parties would meet and confer concerning any technological obstacles to such automated searches. (Exhibit 1, page 18).

Plaintiffs' proposal is modeled on clauses from other ESI protocols so-ordered in this district. *See In re Google Digital Advert. Antitrust Litig.*, 2023 WL 2557433, at *9 (S.D.N.Y. Mar. 17, 2023*); In re Acetaminophen - ASDADHD Prod. Liab. Litig.*, No. 22MD3043 (DLC), 2023 WL 196157, at *5 (S.D.N.Y. Jan. 17, 2023); *see also In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *7 (N.D. Cal. Apr. 23, 2024) ("'Attachment(s)' shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (e.g., Excel files embedded in PowerPoint files) as well as modern attachments, pointers, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents)."); Lea Malani Bays and Stuart A. Davidson, The Missing Links: *Why Hyperlinks Must Be Treated as Attachments in Electronic Discovery*, 92 U. Cin. L. Rev. 979 (2024).[1]

An automated search does not impose undue burden on Defendants. And it is premature for Defendants to claim such an automated search is not technologically possible on their specific systems given that Defendants have not yet attempted to automate the task. *C.f. In re Stubhub Refund Litig.*, 2024 WL 2305604, at *1 (N.D. Cal. May 20, 2024) (finding that automating production of hyperlinks was not feasible only after the defendant "spent hundreds of hours trying to find linked documents and despite having retained an outside e-discovery vendor to assist with this effort"). Throughout the meet and confer process Defendants represented that they utilized the vendor Nuix for eDiscovery. Defendants further represented that an automated search would not be technologically possible given that they have a Microsoft 365 eDiscovery ("E3") Standard

---

[1] Available at: https://scholarship.law.uc.edu/uclr/vol92/iss4/9.

software license (which offers basic searches but leaves modern attachments (cloud links) as just references, requiring manual collection for linked files). After Plaintiffs spoke with Plaintiffs' ESI consultant regarding this, Plaintiffs informed Defendants that upgrading to a Microsoft E5 license could potentially provide a simple and cost effective solution. To automatically find, collect, and preserve these cloud based files or "attachments" as part of the email family requires eDiscovery Premium, which in turn requires either an E5 license or the E3 license Defendants have, with a temporary E5 compliance add-on, which pulls the email with the hyperlinked document automatically. Plaintiffs' ESI consultant informed Plaintiffs that the estimated cost of this is $12-$15 per month, per user, and that organizations regularly temporarily upgrade their software licenses accordingly so that Hyperlinks can be automatically exported in a manner conducive to eDiscovery efforts. Plaintiffs conveyed this information to Defendants and offered to set up a meeting between Plaintiffs' ESI consultant and Defendants' consultant, with or without counsel present, so that the Parties could work together towards a practical, cost-effective solution for the production of Hyperlinked Documents in a transparent manner. Rather than set up a meeting with the Parties' respective ESI consultants, Defendants informed Plaintiffs that upgrading to an E5 license would not provide a technical solution but stated that they would "explore" the cost of upgrading to an E5 license. However, Defendants' proposed ESI Protocol states that "no party is required to upgrade their technology suite for the purposes of Document collection or discovery." (Exhibit 2, pages 18-19). Defendants have not demonstrated the absence of reasonable, proportional, technological capabilities to collect email associated with their hyperlinked documents. Plaintiffs recognize that there are challenges to the collection of hyperlinks for third-party systems and that hyperlinked documents cannot be collected in every instance. However, Plaintiffs' proposal and expectations accommodate those challenges by requiring Defendants to search for and produce hyperlinked document on an automated basis only where there is a cost-effective tool capable of doing so, and only where an automated search is feasible. Defendants' narrow and one-sided proposal on the other hand merely recites the potential difficulties associated with producing hyperlinked documents and places the burden on Plaintiffs to locate the document hyperlinked in an email within Defendants' production. Then, if Plaintiffs are unable to locate the document manually, they must engage in a meet-and-confer in order to request that Defendants search for the hyperlinked document. (Exhibit 2, 18-19). Such a process does nothing but impede Plaintiffs' ability to efficiently review Defendants' document productions. If emails are not produced together with referenced hyperlink attachments then potentially critical evidence of who knew what information when will be excluded from discovery and trial. Consider an email stating "look at this" produced without they hyperlinked document (the "this"). The email would be impossible to decipher. Further, if the email and hyperlinked document are not collected together, then the email may not even be produced as relevant or responsive.

### *Inclusion of Language Concerning the Parties' Roles in Evaluating/Producing Documents*

In Section IV of the ESI Protocol, "Search Collection and Review," Defendants propose including the sentence: "The Parties agree that a Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing their own Hard-Copy Documents and ESI." (Exhibit 2, page 8). This *non sequitur* again places Plaintiffs at a disadvantage and prejudices Plaintiffs' position should they attempt to assert that Defendants' document production is deficient if a dispute arises. Defendants' unilateral, "black box" approach goes against the principles of collaboration and transparency and prevents Plaintiffs from meaningfully assessing the reasonableness of Defendants' ESI collection and review processes.

**THE ROSEN LAW FIRM, P.A.** ♦ **275 MADISON AVENUE, 40TH FL** ♦ **NEW YORK, NY 10016** ♦ **TEL: 212-686-1060**♦ **FAX: 212-202-3827**

Respectfully submitted,

*s/ Sara E. Fuks*
Sara  E. Fuks

Cc:    Counsel of Record via ECF

**THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FL ♦ NEW YORK, NY 10016 ♦ TEL: 212-686-1060♦ FAX: 212-202-3827**