# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELI SPORN, Individually and on behalf of all others similarly situated, | **Case No: 1:23-cv-09630-DEH** |
| Plaintiff, | <u>JURY TRIAL DEMANDED</u> |
| v. | <u>CLASS ACTION</u> |
| BRAINSTORM CELL THERAPEUTICS INC., CHAIM LEBOVITS, STACY LINDBORG, and RALPH KERN | **[PROPOSED] STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")** |
| Defendants. | |

Lead Plaintiff George Colby and named Plaintiffs Eli Sporn and Brett Shirley (collectively, the "Plaintiffs") and Defendants BrainStorm Cell Therapeutics Inc. ("BrainStorm" or the "Company"), Chaim Lebovits, Stacy Lindborg, and Ralph Kern (collectively with BrainStorm, "Defendants", and together with Plaintiffs, the "Parties" and each a "Party"), by and through their respective undersigned counsel, hereby stipulate and agree to the following Stipulated Protocol for Discovery of Electronically Stored Information ("ESI Protocol" or "Protocol").

## I.     GENERAL PROVISIONS

1.     This Protocol will govern discovery of ESI and Hard-Copy Documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), and the individual Policies and Procedures of District Judge Dale E. Ho and Magistrate Judge Sarah L. Cave (together, the "Individual Rules"), and any other applicable orders and rules. To the extent this Protocol is silent on an issue, the Federal Rules of Civil Procedure, Local Rules, or Individual Rules (together "Discovery Rules"), the respective Discovery Rule shall govern, whichever the case may be.

1

2.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter. The Parties shall follow Local Rule 26.4 and the Courts' Individual Rules with respect to any and all discovery disputes.

3.      Unless otherwise agreed to or directed by the Court, each Party will bear the costs of collecting, processing and reviewing Documents in that Party's possession, custody, or control according to this Protocol.

4.      Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any Document. Nothing in this Protocol shall be interpreted to require disclosure of any relevant information or Document that is protected by the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or that is otherwise prohibited from being disclosed by applicable federal, state, or foreign law. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any discovery requests. All objections to the discoverability or admissibility of any Document are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules or Individual Rules of this Court.

5.      Subject to the Parties' objections and responses to requests for production ("Requests for Production") of Documents, non-privileged Documents discoverable under the Discovery Rules, and any other applicable orders and rules, shall be produced in the manner provided herein, to the extent reasonably practicable.

6.      Each production of ESI shall be accompanied by correspondence indicating the Bates range and any applicable passwords.

Case No. 1:23-cv-09630-DEH
STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")
2

## II.    DEFINITIONS

1.    The Parties expressly adopt and incorporate by reference (as if fully set forth herein) the uniform definitions set forth in Local Rule 26.3. Additional defined terms are set forth below. In the event of any conflict, the more specific definitions set forth below shall control.

2.    Action: means the above-captioned case, *Sporn v. Brainstorm Cell Therapeutics, Inc.*, ET AL., Case No. 23-CV-09630-DEH (S.D.N.Y.).

3.    Document: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A) and S.D.N.Y. Local Rule 26.3. The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

4.    Email: means electronic messages sent or received over the internet using simple mail transfer protocol or internally within an organization's mail service, including, but not limited to, Microsoft Exchange.

5.    Email Threading: means a single email conversation that starts with an original email (the beginning of the conversation) and includes all subsequent replies and forwards pertaining to that original email.

6.    Electronically Stored Information or ESI: has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

7.    Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available. The extracted text shall contain the content of any hypertext markup language "HTML") present in the Native Format file, specifically including (but not limited to) the full anchor text (i.e., the ordinarily visible, clickable text of the hyperlink, often presented in blue in the linking document) and target

**Formatted:** Small caps

**Formatted:** Centered

text (i.e., the ordinarily invisible hypertext containing the Uniform Resource Locator ("URL") for the linked location) of any Hyperlinks, as defined herein. Nothing herein shall require a Producing Party to create or produce HTML that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically collectable. The extracted text shall not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates Numbers and Endorsements (except in the cases of redactions).

8.      Go-Get: means a request to manually retrieve and produce a specifically-identified Document, or small number of Documents.

9.      Hard-Copy Document: means Documents existing in paper form at the time of collection, or otherwise stored in a manner other than electronically.

10.     Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

11.     Hyperlink:  means ~~an HTML link from an electronic~~ a pointer in a hypertext Document~~—usually appearing as an underlined or highlighted word or picture—~~that, upon selection, sends a user to another ~~electronic~~location either within the current Document~~, typically activated by clicking~~ or to another location accessible on ~~a highlighted word or image on the screen, and includes both~~ the ~~"anchor"~~network or internet. A Hyperlink specifically does not

**Formatted:** Font color: Custom Color(RGB(32,33,36)), Pattern: Clear (White)

**Formatted:** Default Paragraph Font, Font color: Auto, Pattern: Clear

**Formatted:** Default Paragraph Font, Font color: Auto, Pattern: Clear

**Formatted:** Small caps

**Formatted:** Centered

include any text (*i.e.*, the ordinarily visible clickable text of the hyperlink, often presented in blue in the linking document) and the "target" text (*i.e.*, the ordinarily visible hypertext containing the Uniform Resource Locator ("URL") for the location ofor Metadata associated with the linked documentlocation.

12.    Instant Messages: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), including but not limited to: Slack, Microsoft Teams, Google Talk, Google Chat, Google Hangouts, Skype, Facebook Messenger, Instagram Messenger, Line, Wire, Signal, Telegram, Snapchat, Wickr, Discord, WhatsApp, Bloomberg Messenger, TikTok, or any similar or proprietary instant messaging system.

13.    Load File: means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a document and information related to embedded content.

14.    Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as

Formatted: Small caps

Formatted: Centered

Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

15.    Native Format: means the format of ESI in the application in which such ESI was originally created.

16.    OCR: means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

17.    Privileged Information: means any Document or other information that is subject to a claim of attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or that is otherwise prohibited from being disclosed by applicable federal, state, or foreign law.

18.    Producing Party: means any Party or Third Party in the Action that produces Documents.

19.    Protective Order: means the <<PROTECTIVE ORDER TITLE>> entered in this Action on <<DATE>>, as amended by any subsequent order(s) of the Court.

20.    Receiving Party: means a Party in the Action to whom Documents are produced.

21.    Responsive Document: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party

**Formatted:** Small caps

**Formatted:** Centered

has agreed or been ordered to produce, subject to the limitations set forth in the Discovery Rules and/or Court order.

22.    Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

23.    Third Party: Any other person/entity, other than a party to this Action.

## III.    PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. Relatedly, the Parties agree to meet and confer to identify: the time frame for ESI that is necessary to be preserved; the names and number of custodians (along with any relevant information regarding job title and dates of employment in the relevant role) and custodial sources whose ESI should be preserved; and/or the sources that may possess ESI from which the producing Parties plan to collect Documents in response to any Federal Rule of Civil Procedure 34 request for production. Nothing in this ESI Protocol shall affect the Parties' respective preservation obligations imposed by rule or law. The Parties will further meet and confer to identify any non-custodial data sources whose ESI will be reviewed pursuant to this Protocol.

## IV.    SEARCH, COLLECTION & REVIEW

Consistent with Principle 63 of The Sedona Conference Principles, the Parties will meet and confer in good faith in an effort to reach an agreement on any methodologies to be employed for the collection and production of Documents in response to any Federal Rule of Civil Procedure 34 request for production, such as the use of search terms, date ranges, electronic sources, or other filters. To the extent search terms are used, the Producing Party will, upon request undertake

**Formatted:** Small caps

**Formatted:** Centered

reasonable efforts to provide search term reports identifying the repository or repositories searched and indicating the "hit" count of Documents and Documents including family per search term, the unique hit count of Documents and Documents including family per search term, and the total number of unique documents that hit on the search term list as a whole. If the Producing Party believes that such search term reports are not reasonably practicable, the Producing Party shall meet and confer with the Requesting Party to explain the basis of that belief and explore the feasibility and appropriateness of any alternative search report. The use of search terms will not preclude the Parties' use of other reasonable review tools, including TAR. The Parties agree that a Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing their own Hard-Copy Documents and ESI. The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR"). If a Producing Part intends to use TAR To cull documents for review and production, the Producing Party shall disclose the TAR software that will be used, as well as whether a TAR 1.0 or TAR 2.0 (CAL) workflow will be implemented. When the Producing Party determines that further review of Documents is disproportionate, the Producing Party will disclose the validation process used to support ceasing review.

Nothing in this ESI Protocol prevents a Party from reviewing and analyzing information identified by search terms and/or TAR to determine whether that information is responsive to a request for production and withholding Documents determined to be non-responsive. Further, the mere fact that a Document is hit on or is captured by the application of any agreed upon search terms does not mean that such documentDocument is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

**Formatted:** Small caps

**Formatted:** Centered

## V.    PRODUCTION FORMATS FOR DOCUMENTS FROM HARD-COPY DOCUMENTS

1.    <u>Generally</u>: Except for redacted and logged documents as described in Section VII. of this ESI Protocol, *infra*, the Parties will produce documents originating from Hard-Copy Documents in CCITT Group IV single-page TIFF format (black and white, 300 dpi). If an original Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to preserve legibility. The Parties agree not to degrade the searchability or legibility of Documents as part of the Document production process.

2.    <u>Document Unitization</u>: In scanning paper Hard-Copy Documents, each page of paper should be output to a single page TIFF file. Distinct, logical Document breaks should be defined as such in a standard load file as described herein. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing Post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents in accordance with this paragraph, but recognize that certain Documents and categories of Documents might not reasonably be scanned to comply.

**Formatted:** Small caps

**Formatted:** Centered

3.    Load File: The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text and Metadata with TIFF/JPG images. With respect to hard copy Documents, data on the load file will include the following Metadata or their equivalents (when available), as defined in Section VI of this ESI Protocol:

    a.    BEGDOC;

    b.    ENDDOC;

    c.    BEGATTACH;

    d.    ENDATTACH;

    e.    CUSTODIAN;

    f.    CONFIDENTIALITY;

    g.    PGCOUNT;

    h.    REDACTED; and

    i.    TEXTLINK.

## VI.    PRODUCTION FORMATS FOR ESI

1.    Production Format Generally: Except for redacted and logged documents as described in Section VII of this ESI Protocol, *infra*, the Parties will produce Documents originating as ESI in TIFF format, with the exception of spreadsheets, audio, and video files, which shall be produced in Native Format. ESI shall be produced with Extracted Text, along with the below listed Metadata fields, where reasonably available. If an original Document contains color, it need not be produced in color in the first instance. However, the producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the

**Formatted:** Small caps

**Formatted:** Centered

Document. Color Documents should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of email messages should include the BCC line. If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. Subject to the caveat below, substantive embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "EMBEDDED" Metadata field. The Parties agree that embedded Documents need not be extracted as separate Documents as long as they are displayed in their entirety and legible in the parent Document (e.g., logos, icons, bin or images). Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The Parties will provide a standardized load file compatible with Relativity.

      2.      <u>Metadata</u>: Each of the Metadata and coding fields set forth below that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. To the extent that Metadata below does not exist or is not reasonably accessible or available for any documents produced, nothing in this Protocol shall require any Party to extract, capture, collect, create or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) All Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and

**Formatted:** Small caps

**Formatted:** Centered

text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents, the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all non-privileged Metadata fields will be provided and will include all non-privileged, non-redacted data. Redacted Documents shall be identified as such in the load file provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically collectable. The Parties agree, in particular, that "go-get" collections of small sets of Documents may not require forensic-style collection to preserve all Metadata. When the Producing Party is unable to produce Metadata for a particular field or ESI Document, the Receiving Party may request an explanation of that inability. The Parties shall then meet and confer to attempt to resolve the problems. With respect to ESI, data on the load file will include the following Metadata fields or their equivalents (when reasonably collectable):

| Field Name | Description |
|---|---|
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document originated |
| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |

**Formatted:** Small caps

**Formatted:** Centered

| FROM | Author of the email message |
|---|---|
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "Carbon Copies" of the e- mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | The title of a document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a document |
| CREATED DATE/TIME | Date and time file was created |
| LAST MODIFIED DATE/TIME | Date and time document was last modified |
| EMAIL SENT DATE/TIME | Date and time email was sent |
| EMAIL RECEIVED DATE/TIME | Date and time email was received |
| DATE/TIME APPOINTMENT START | Start date and time of calendar appointment entry |
| DATE/TIME APPOINTMENT END | End date of calendar appointment entry |
| PGCOUNT | Number of pages in a document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the document in the repository from which it was collected. |
| FILE TYPE | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |

**Formatted:** Small caps

**Formatted:** Centered

| FILE NAME | Original name of the file or subject of email, including file extension |
|---|---|
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (i.e., CONFIDENTIAL). Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |
| SOURCE | Physical location where documents were collected (e.g., Custodian's laptop, hard drive, shared drive, cell phone) |
| ISEMBEDDED | Identifies if a document is embedded in another document. |
| LAST SAVED BY | Name of the last person to save the document from extracted metadata |

3.    Reproduction in Native Format: The Parties further agree that to the extent any Party seeks production in Native Format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing Party shall respond reasonably and in good faith to any such request.

**VII.    MISCELLANEOUS PROVISIONS**

1.    Additional Custodians or Data: The Parties reserve the right to request the inclusion of additional custodians or non-custodial data sources whose relevance was discovered via Documents or data produced, or testimony given, or for other good cause shown, within a reasonable time of such discovery, subject to the Discovery Rules, through the close of fact discovery. If the Producing Party objects to the inclusion of such sources, the Parties will meet and

Formatted: Small caps

Formatted: Centered

confer to resolve the matter. If the Parties cannot reach resolution, the Court will determine the matter.

2.    Additional Formatting Processes: Any Producing Party shall De-NIST their electronic collections before searching and review using the then-current NIST list published by the National Institute of Standards and Technology.

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents or information in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

The Parties will make reasonable efforts to ensure that all encrypted or password-protected ESI are successfully processed prior to production. To the extent encrypted or password-protected ESI are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents. To the extent security protection for such ESI cannot be successfully processed despite reasonable efforts, the Parties shall not be required to produce them. If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document) using reasonable efforts, those technical problems shall be identified and disclosed to the receiving party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed." A receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

3.    Bates Numbering: The Parties shall assign a Bates number to individual pages of TIFF documents and a Bates number to each document produced in Native Format. Bates numbers

**Formatted:** Small caps

**Formatted:** Centered

shall be unique across the entire document production and sequential within a given Document. All volumes of production shall be identified by the same Bates prefix and a numerical sequence.

4.      Confidentiality Designations: If a Document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such document pursuant to the Protective Order. If the receiving Party believes that a confidentiality designation obscures the content of a document, then the receiving Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any Native Format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document or in the filename, if used in Native Format. For each Document that is marked confidential, a confidentiality field will be populated with the word "Confidential" in the .DAT file.

5.      De-Duplication and Document Families: The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values at a family level and will produce only a single copy of identical ESI, except where de-duplication would break up Document families. De-duplication shall not break up Document families. The custodian associated with the first copy of a Document processed will be considered the primary custodian for that Document (the custodian who will be used as the basis for determining which other collected Documents are duplicates). The Producing Party shall produce an "All Custodians" metadata field with each production as specified in Section VI above which lists every custodian

**Formatted:** Small caps

**Formatted:** Centered

or source who or which possessed a duplicate Document. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information. If additional Documents are produced after substantial completion of Document discovery, the Producing Party shall produce an overlay that provides an updated "All Custodian" field at the time new productions are made.

If there are any handwritten notes, or any other markings, on a Document, it shall not be considered a duplicate. Any Document that contains an alteration, marking on, or addition to the original Document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If such markings/alterations are made in color, the Documents must, to the extent reasonably practicable, be produced in color as originally intended.

6.      Hyperlinked Documents:   For Documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 or 45, the Producing Party shall conduct an automated search across all emails to be produced, where the Producing Party has access to a tool capable of performing such an automated search, to identify any documents that contain hyperlinks to an internal or non-public document. Additionally, the Receiving Party may make reasonable and proportionate requests that the Producing Party conduct a reasonable search for internal or non-public documents identified via hyperlinks. For each hyperlink identified by the Producing Party or the Receiving Party, the Producing Party shall conduct a reasonable search for the document corresponding with the hyperlink. The Producing Party shall process Documents corresponding with the hyperlinks with reasonably available metadata, and each such hyperlinked Document shall be treated as a traditional attachment to the original Document containing the

**Formatted:** Small caps

**Formatted:** Centered

hyperlink and be produced in the same manner as other document families (i.e. with corresponding metadata linking family members in the load file). To the extent possible, the hyperlinked document produced should be the contemporaneous document version that was likely present at the time the underlying Document was sent. If a Producing Party identifies any technical obstacle to the collection or production of hyperlinked files included in (or referenced to) any specific repository, the Producing Party will provide the Requesting Party a description of the nature of the issue, and the Parties will meet and confer in good faith to negotiate a mutually agreeable compromise.

6.      Hyperlinked Documents: The Parties recognize that there are technological limitations on collecting Documents that are hyperlinked in email, Teams, and Slack. Among other things, only hyperlinked Documents currently stored within the same suite of software used for email, Teams, or Slack can be collected and only with the appropriate licenses. For example, even with the appropriate licenses, only Documents stored in Google Suite can be collected from hyperlinks in Gmail; only Documents stored in Microsoft 365 can be collected from hyperlinks in Outlook; and only Documents stored in Slack can be collected from hyperlinks in Slack. The Parties further recognize that, even with the appropriate licenses, there are technological limitations on identifying and collecting the version of the Document at the time it was circulated as a hyperlink in email, Teams, or Slack. The Parties further recognize that when a hyperlinked Document is deleted or moved, it cannot be collected. If the Receiving Party is unable to locate or identify an internal hyperlinked Document that is material to the claims or defenses in this Action, the Receiving Party may ask the Producing Party to locate or identify the hyperlinked Document. The Receiving Party and the Producing Party shall then promptly meet and confer to discuss

**Formatted:** Small caps

**Formatted:** Centered

conducting a reasonable and proportionate search for a reasonable and proportionate number of such Documents in accordance with the Discovery Rules. If the Parties cannot agree on how to conduct a reasonable and proportionate search for a reasonable and proportionate number of such Documents, then the Parties shall raise the dispute with the Court in accordance with the Discovery Rules. No Party is required to upgrade their technology suite for the purposes of Document collection or discovery. The Parties shall collect email data from either active email (*e.g.*, Gmail or Outlook) or archive (*e.g.*, Google Vault, Mimecast, Global Relay), but not both.

7.    Responsive ESI Discovered Outside of Search Methodology: Notwithstanding any of the foregoing, if any Party identifies ESI or Documents that are responsive to a specific request for production and subject to discovery in this matter outside of the search methodology(ies) agreed to by the Parties, it shall produce all such Documents to the extent they are not privileged. This provision does not constitute a waiver of any objections a Producing Party may have with respect to any discovery requests.

8.    ESI Not Required: The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production, provided, however, that nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified below be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval:

a.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data on

**Formatted:** Small caps

**Formatted:** Centered

hard drives, solid-state drives (SSDs), or similar physical media, and which are only accessible by forensics;

b. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

c. On-line access data such as temporary Internet files, history, cache, cookies, and the like;

d. Data stored on photocopiers, scanners, and fax machines;

e. Data in Metadata fields that are frequently updated automatically, such as last-opened dates;

f. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

g. Server, system, or network logs;

h. Data remaining from systems no longer in use that is unintelligible on the systems in use; and

i. Video surveillance data.

9. Preservation of Parent-Child Relationships: The Parties agree that if any part of an email or its attachments is responsive, the entire family of email and attachments will be produced, except any family members that must be withheld or redacted on the basis of attorney-client

Formatted: Small caps

Formatted: Centered

privilege, attorney work product protection, or any other applicable privilege or protection, or because they are otherwise prohibited from being disclosed by applicable federal, state, or foreign law. The Parties shall use reasonable efforts to preserve parent-child relationships (the association between an attachment and its parent Document). The Parties will provide a BEGATTACH and ENDATTACH for each produced attachment in the load file. If any member of a Document "family" (*e.g.*, an email attachment) is withheld pursuant to the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or because it is otherwise prohibited from being disclosed by applicable federal, state, or foreign law, then the Producing Party shall produce a one-page slipsheet TIFF image stating, "Withheld on Privilege Grounds" or similar language, and bearing a unique Bates number.

10.    Redactions: Except as set forth herein, responsive Documents shall not be withheld or redacted on any basis other than the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or because they are otherwise prohibited from being disclosed by applicable federal, state, or foreign law. In addition, a Party may redact the following personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers; personal addresses; personal telephone numbers; health information; the names of minor children; and similar irrelevant personal identifiable information. For redacted items that were originally ESI, all Metadata fields noted in this Protocol that do not contain information covered by the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or that is otherwise prohibited from being disclosed by applicable federal, state, or foreign law, will be provided and will include all non-redacted data. The Parties specifically agree that Documents produced shall not be redacted for relevance, responsiveness, or

**Formatted:** Small caps

**Formatted:** Centered

any other basis not contemplated herein. The Parties will produce redacted documents in TIFF format with corresponding searchable text and associated metadata for the Documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Parties shall provide a copy of the native file with redactions when possible. For redacted items that were originally ESI, all Metadata fields noted in this Protocol that do not contain information covered by the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or that is otherwise prohibited from being disclosed by applicable federal, state, or foreign law, will be provided and will include all non-redacted data. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.

11.     <u>Processing Specifications</u>: The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file. Where Documents are not otherwise produced in Native Format, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions. The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production.

**Formatted:** Small caps

**Formatted:** Centered

12.      Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata via secure file transfer protocol ("FTP") or physical media ("Production Media"). For physical media, each piece shall include a unique identifying label corresponding to the identity of the Producing Party (*e.g.*, "DD"), the sequential production number (*e.g.*, "PROD004"), and the Bates ranges of the Documents in that production (*e.g.*, "DD0000000123 - DD0000000456"). To the extent that the Production Media includes any confidential information protected under the Protective Order, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Protective Order. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the BEGDOC and ENDDOC range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

13.      Third Party Documents and ESI: A Party that issues a subpoena upon any third party ("Issuing Party") shall include a copy of this Protocol and the Protective Order with the subpoena. The Issuing Party shall produce a copy to all other Parties of any ESI or hard copy (including any Metadata) obtained under subpoena to a third party. If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

**Formatted:** Small caps

**Formatted:** Centered

14.    Non-English Language Documents and ESI

a.    No Party is required to provide translated text unless they are creating such translated text for their own use. The Parties recognize that translation software may not be accurate.

b.    Metadata: In addition to the required production Metadata and Load File formats specified elsewhere in this ESI Protocol, including in Exhibit A, when possible, the Metadata for any translations produced to another Party shall clearly and logically reflect the translated Document's relationship to the original language Document, in a consistent manner designed to facilitate automated identification of all translations produced that are associated with a given original language Document. In addition, to the extent reasonably practicable and technologically possible using automated processes without undue burden or cost, the primary language for each Document produced shall be set forth in the accompanying Metadata to the extent reasonably practicable using automated processes. The Parties will meet and confer on the necessity of additional formatting processes to enhance the production of Non-English language Documents and ESI, including but not limited to: (a) additional or different ESI Metadata and coding fields; and (b) alternative technical specifications for Documents containing text or characters which may be rendered inaccurate or illegible through the imaging and/or OCR process(es).

c.    OCR Text: Non-English language Hard-Copy Documents shall be produced with corresponding searchable multi-page optical character recognition ("OCR") text. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. All OCR

**Formatted:** Small caps

**Formatted:** Centered

shall be performed in a manner that takes into account the primary language contained in a document, so as to render the most useful resulting OCR text.

d.    Search Terms: For any search terms to be utilized in this Action, the Parties agree to cooperate in good faith in order to arrive at mutually agreeable translations of such search terms into any relevant languages, dialects, or character sets. One or more of the original and any translated forms of any search term may be applied to search a Party's ESI, as agreed by the Parties.

15.    Claims of Privilege and Privilege Logs

a.    Non-Waiver: Pursuant to Rule 502(d) of the Federal Rules of Evidence, nothing in this Order shall require disclosure of Privileged Information, and the production of attorney work product or Privileged Information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) and shall supersede the tripartite non-waiver elements of Rule 502(b). This Protocol will not serve to limit a party's right to conduct a review of Documents, ESI or information (including Metadata) for relevance, responsiveness and/or segregation of Privileged Information before production. The Protective Order governs the proper procedure for the notification and return of Privileged Information when identified by the Producing Party.

b.    Privilege Logs: To the extent that a Party reasonably determines that one or more responsive Documents are not discoverable on the basis of the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection, or that is otherwise prohibited from being disclosed by applicable federal, state, or foreign law, the Party shall provide the Receiving Party with a privilege log consistent with Federal Rule of Civil

Procedure 26(b)(5)(A)(ii), Local Rule 26.2(c), and generally accepted standards and practices. To the extent reasonably practicable and technologically possible without undue burden or cost, the privilege log shall include the following information:

     i.    an assigned "PRIV ID" number;

    ii.    the Custodian;

   iii.    the sent date of email documents;

   iv.    the Document Title;

    v.    the Email Subject, for email documents;

   vi.    the Creation Date, for non-email documents;

  vii.    the File Name, for non-email documents;

 viii.    the File Extension;

   ix.    the File Type;

    x.    the Last Modified Date;

   xi.    the Privilege(s) or other protection claimed and basis for the claim;

  xii.    the name of the author(s)/addresser(s);[1]

 xiii.    the addressee(s);

 xiv.    all carbon copied ("CC") recipients;

  xv.    all blind carbon copied ("BCC") recipients;

---

[1] For emails, this information should be populated with the metadata extracted from the email "FROM" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "DOCUMENT AUTHOR" field.

xvi.    if there is no attorney listed as the author or recipient of a document on the privilege log, the name of the attorney(s) or privilege actor(s) whose advice is being sought, provided, or reflected, or whose work product is included or reflected shall be identified;

xvii.    the type of document, e.g., letter, email or memorandum; and

xviii.    the general subject matter of the document.

For documents in which any of the undersigned counsel is the author or sole recipient, parts (l) and (r) are not required.

The Party receiving the privilege log may make reasonable requests for additional information with respect to specific entries concerning the privilege(s), protection(s), or prohibition(s) claimed and a description of the general subject matter contained in the Document(s) sufficient to allow the Receiving Party to assess the claimed privilege, protection, or prohibition and/or to allow the Court to rule upon the applicability of the claimed protection. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, or if the challenged party fails to respond to the challenging party within a reasonable time, the Parties must proceed in accordance with the discovery dispute procedures reflected in the applicable Local Rules and Individual Rules. The following categories of Documents need not be logged:

A.    Documents or portions thereof that reflect communications with the undersigned counsel or members of their law firms that relate to this litigation and post-date the filing of the initial complaint on November 1, 2023, in this Action;

**Formatted:** Small caps

**Formatted:** Centered

B.    Work product created at the direction of any of the undersigned firms that relates to this litigation and post-dates the filing of the complaint on November 1, 2023; and

C.    Documents that have been redacted, pursuant to Section VII.10, except that either Party can make reasonable requests for additional information regarding the basis for specifically identified redactions where the basis is not sufficiently clear from the face of the Document as produced.

Privilege logs shall be produced as searchable, editable, Microsoft Excel spreadsheets. The Parties agree to meet and confer about methods and approaches to reduce a producing Party's burden in furnishing a privilege log, where reasonably necessary.

The failure to log privileged Documents will not result in the waiver of privilege, provided that upon discovering the omission, the Producing Party provides notice to the Requesting Party of the failure to log within thirty (30) days of discovering the inadvertent omission, and within a reasonable time thereafter, sends the requesting Party an addendum to the appropriate privilege log providing the required entries for the Document(s).

Privilege logs shall be due forty-five (45) days after the deadline for the substantial completion of Document production, as agreed to by the Parties. Any receiving Party shall have through the close of discovery, and in no event less than sixty (60) days from the receipt of any Producing Party's complete and final privilege log, to contest any withholding or redaction reflected therein. Should any Document initially withheld or redacted on a claim of attorney be subsequently produced or unredacted (by Court order or otherwise), the Producing Party may, upon request and conferral with Receiving Party, serve a revised privilege log. A Receiving Party

**Formatted:** Small caps

**Formatted:** Centered

may request additional discovery based on any Document(s) previously withheld or redacted, even if response to such discovery might occur after the contemplated close of fact discovery, and the Parties will cooperate in good faith to minimize any impact on the discovery schedule occasioned thereby.

**VIII.    MODIFICATION**

This Protocol may be modified by written agreement of the Parties or by the Court for good cause shown.

Formatted: Small caps

Formatted: Centered

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Respectfully submitted,

Dated: ~~December 18~~*DRAFT* , 2025

*/s/ DRAFT*

Douglas H. Flaum
Molly L. Leiwant
Dina Ljekperic
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax: 212.355.3333
dflaum@goodwinlaw.com
mleiwant@goodwinlaw.com
dljekperic@goodwinlaw.com

*Counsel for Defendants BrainStorm Cell
Therapeutics Inc., Chaim Lebovits, Stacy
Lindborg, and Ralph Kern*

*/s/ DRAFT*

Sara Fuks
Laurence Rosen
Phillip Kim
Yitzhak Fishbach
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
sfuks@rosenlegal.com
lrosen@rosenlegal.com
philkim@rosenlegal.com
yfishbach@rosenlegal.com

*Counsel for Lead Plaintiff and the Putative
Class*

**SO ORDERED.**

DATED: _____

_____
HON. DALE E. HO
U.S. District Judge