

Charles A. Brown
+1 212 459 7231
CBrown@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

December 18, 2025

**VIA ECF**

The Honorable Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

**Re:** **Sporn v. BrainStorm Cell Therapeutics Inc., et al., Case No. 1:23-cv-09630-DEH**

Dear Judge Ho:

We write on behalf of Defendants BrainStorm Cell Therapeutics Inc. ("BrainStorm"), Chaim Lebovits, Stacy Lindborg, and Ralph Kern (together, "Defendants") pursuant to Section 5 of the parties' November 13, 2025, joint letter (ECF No. 42) and Section 4(k) of the Court's Individual Rules and Practices in Civil Cases to request a conference before the Court to discuss a dispute concerning the parties' [Proposed] Stipulated Protocol for Discovery of Electronically Stored Information (the "ESI Protocol").

**Background.** The parties met and conferred regarding the ESI Protocol on November 13, 2025, at 2:00 pm; November 20, 2025, at 2:00 pm; and December 11, 2025, at 3:30 pm. The parties have agreed on the terms of the ESI Protocol, except, primarily, as to the treatment of hyperlinked documents.[1] As more fully set out in their version of the ESI Protocol, Lead Plaintiff George Colby and named Plaintiffs Eli Sporn and Brett Shirley (together, "Plaintiffs") take the position that hyperlinked documents should be treated as "traditional attachments" and propose that "the Producing Party shall conduct an automated search across all emails to be produced, where the Producing Party has access to a tool capable of performing such an automated search, to identify documents that contain hyperlinks to an internal or non-public document." As more fully set out in their ESI Protocol, which is attached hereto as Exhibit A, Defendants take the position that hyperlinked documents are not attachments, and since there are technological limitations on collecting hyperlinked documents, Defendants propose instead that if a "Receiving Party is unable to locate or identify an internal hyperlinked Document that is material to the claims or defenses in this Action, the Receiving Party may ask the Producing Party to locate or identify the hyperlinked

---

[1] Defendants also propose including Sedona Conference Principle 6, which has been adopted by numerous courts in this District. *See, e.g.*, *Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) ("'Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'"). Plaintiffs have not explained the basis for their opposition to including Sedona Conference Principle 6.



The Honorable Dale E. Ho
December 18, 2025
Page 2

Document," and that the "Receiving Party and the Producing Party shall then promptly meet and confer to discuss conducting a reasonable and proportionate search for a reasonable and proportionate number of such Documents."   Attached as Exhibit B is a redline comparing the parties' proposed ESI Protocols.

**Hyperlinked documents are not attachments.**  Plaintiffs' position that hyperlinked documents should be treated as attachments has been rejected by virtually every court to consider the issue.  *See, e.g.*, *In re Insulin Pricing Litig.*, 2024 WL 2808083, at *7 (D.N.J. May 28, 2024); *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) ("[T]he ESI protocol should make clear that hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production."); *Nichols v. Noom*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021).[2]  As the court in *Noom* explained, "[w]hen a person creates a document or email with attachments, the person is providing the attachment as a necessary part of the communication.  When a person creates a document or email with a hyperlink, the hyperlinked document/information may or may not be necessary to the communication."  *Noom*, 2021 WL 948646, at *4.  The list of hyperlinks that are not attachments "goes on and on": (1) "cases cited" in a legal memorandum, (2) "another portion of the same document," (3) "a SharePoint folder," (4) "a phone number," (5) "a tracking site for tracking a mailing/shipment," (6) "a facebook page," (7) "a terms of use document," or (8) "a legal disclaimer" are not attachments.  *Id.*  The Court should reject Plaintiffs' position that hyperlinked documents be treated as traditional attachments and adopt Defendants' definition of the term "Hyperlink" based on the Sedona Conference Glossary.

**Defendants are not aware of any commercially available tools that would allow them to implement Plaintiffs' proposal.**  We have conferred with internal and external e-discovery experts and determined that no commercially available tools can automatically collect the version of a hyperlinked document that existed at the time the hyperlink was sent and attach it to the email containing the hyperlink.  That is not surprising.  Numerous courts have acknowledged that such commercially available tools do not exist.  *See, e.g.*, *In re StubHub Refund Litig.*, 2024 WL 2305604, at *2 (N.D. Cal. May 20, 2024) ("[T]he non-existence of any commercially available software that can implement the hyperlink requirement in the ESI Order represents a rare point of agreement between the parties."); *In re Insulin Pricing Litig.*, 2024 WL 2808083, at *8; *Noom*, 2021 WL 948646, at *5 n.5.  There are at least three technological challenges with Plaintiffs' proposal (and there may be more).  *First*, existing commercially available tools can only collect hyperlinked documents stored within the same suite of software and only with the appropriate licenses, *e.g.*, only documents stored in Microsoft 365 can be collected from hyperlinks in Outlook.  *See* Commentary, at 661 (existing tools "may only be able to associate hyperlinks in collaboration platform messages with hyperlinked documents in the collaboration application's environment").  *Second*, even with the appropriate license, there is no way for BrainStorm to collect only the version of the hyperlinked

---

[2] The Sedona Conference's Commentary on Discovery of Collaboration Platforms Data also states that "hyperlinked documents are not stored in the same way as traditional static attachments" and explains that "[p]arties should take care not to reflexively treat hyperlinked documents in ESI protocols as the same as traditional attachments." The Sedona Conference, *Commentary on Discovery of Collaboration Platforms Data*, 26 SEDONA CONF. J. 627, 639, 653 (2025) ("Commentary").



The Honorable Dale E. Ho
December 18, 2025
Page 3

document that existed at the time the hyperlink was circulated.  To do so, premium subscribers to Microsoft 365, which BrainStorm is not, must configure their Microsoft 365 environment to retain a copy of the as-sent version of hyperlinked documents in advance of sending the message containing the hyperlinked document.  As a result, BrainStorm can either collect only the current version of the hyperlinked document as it exists on the date of collection or every version of the hyperlinked document. *Third*, when a hyperlinked document is deleted or moved, it cannot be collected.  Until yesterday, Plaintiffs had not even attempted to proffer a tool that can overcome these challenges to implement their proposal, and our internal and external e-discovery experts have confirmed that the tool that Plaintiffs proffered yesterday, Nuix, cannot overcome these challenges.

**Even if tools to implement Plaintiffs' proposal were commercially available, Plaintiffs' proposal is unduly burdensome and not proportional to the needs of the case.**  Even if it could be implemented, Plaintiffs' proposal is neither reasonable nor proportional to the needs of the case because it would result in potentially massive duplication and redundancy.  Defendants will search BrainStorm's reasonably accessible internal databases for potentially responsive, non-privileged documents.  Therefore, to the extent that BrainStorm's email systems contain emails with hyperlinks to documents stored in those databases, any potentially responsive, non-privileged hyperlinked documents in those databases already will be collected and reviewed.  Plaintiffs' proposal would require Defendants to collect those same documents and review them potentially hundreds of times.  As the court in *Noom* explained: "[O]ne email thread may contain multiple hyperlinks to the same document … .  The same underlying hyperlinked document may be pulled tens if not hundreds of times in some cases.  This additional collection would certainly increase the review population and … complicate de-duplication, delay production, and impose additional costs."  *Noom*, 2021 WL 948646, at *4.  "Plaintiffs have not made a showing that … establishing the linkages for *all* hyperlinked documents is proportional to the needs of the case." *Id.* at *5.

**Defendants' proposal has been adopted by virtually every court to consider the same issue.**  Because Plaintiffs' proposal is unworkable using commercially available tools and, in any event, unreasonable and disproportionate to the needs of the case, virtually every court to consider the same issue has adopted a proposal similar to Defendants'.  For example, the court in *Noom* held that "to the extent Plaintiffs identified certain internal documents containing hyperlinks to internal Noom documents that appeared to be material to the claims or defenses in this action and could not locate the corresponding hyperlinked document in the production, they [c]ould raise the issue with Noom and[, for a reasonable number of such documents,] Noom would be required to provide the document or its Bates number." *Id.* at *1; *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1786293, at *8 (N.D. Cal. Feb. 20, 2024) ("[T]he Requesting Party may submit a list of hyperlinks … , and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location … . The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome."); *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 ("[T]he parties should consider reasonable requests for production of hyperlinked documents on a case-by-case basis. Such requests should not be made as a matter of routine."); Plaintiffs have shown no need to, and the Court should not, reinvent the wheel.



The Honorable Dale E. Ho
December 18, 2025
Page 4

Respectfully submitted,

*/s/ Charles A. Brown*

Charles A. Brown

cc:      All Counsel of Record (via CM/ECF)